This is Wernz v. Wernz, and for the appellant, Ms. Shelf, did I pronounce that correctly? And for the appellee, Mr. Myers. You may proceed. May it please the court and counsel, I am privileged here today, I represent Daniel Wernz, who is the appellant in this case, and also the plaintiff in the lower case. The question here that we're asking you to answer is, did the lower court err in compelling my client, Mr. Wernz, to sell real estate that is held in trust for his benefit to his brothers at an appraised value out of a partition suit? The second part of that question is, did the lower court err in compelling my client, Mr. Wernz, to sell real estate that he had inherited from his mother to his brothers at the appraised value in a partition suit? Both groupings of real estate were subject to a right of first refusal that I will tell you more about as we go on. The facts in this case are fairly convoluted. The standard is de novo, because we had no fact issues presented to the trial court. We were simply there asking the court to address a document, and also the application of the statute, the Partition Act. The facts in this case, what you need to know that really matters is that there were three groupings of real estate that are subject to a partition suit that my client filed. The first grouping of real estate, my client individually owned an undivided one-sixth interest by himself. His brothers, Albert and Tommy, owned a one-sixth undivided interest as well. And then a trust, the Wilbur Anton Wernz Residuary Trust, owned an undivided one-half interest. So that grouping of real estate, there were actually four owners. The second grouping of real estate, my client owned an undivided one-third with his brothers. They received that real estate from their mother out of her estate. And so her mother conveyed that, and she conveyed it to them subject to a right of first refusal. The language in the right of first refusal for mom's estate says that my sons shall offer the real estate in the event they decide to sell to my other sons at a value they'd be willing to accept from any other buyer. So those are the two groupings of real estate that are most relevant here today. The third group of real estate is real estate that's really not relevant apart from you need to know that the partition suit also has real estate that's not subject to a right of first refusal, that the three of them own together individually as undivided one-third interests. If you go back to the trust ground, the first grouping of real estate, that real estate, as I said, my client holds an undivided one-sixth interest, and then there's an undivided one-half interest that's placed in a trust. The trust actually was formed by the boy's father, Wilbur, upon his passing as part of a testamentary instrument. What the trust language says is that the real estate that he owned at his death that was used in farming shall be held in trust for a period of ten years subsequent to the death of his wife. So what you need to know is it's held in this trust until 2018. Then upon that 2018 date, it's to be distributed then to the three sons. So essentially all of their interests eventually will merge with the three sons again owning undivided one-third interests, or just not there yet. What the trust dictates is once the real estate is distributed, it is to be subject to a very similar right of first refusal as to that which they inherited from their mother. If my son should decide to sell, they must offer it to the farming sons at any price they would be willing to accept from any other buyer. So that's why I tell you it's convoluted, because we have three groupings of real estate. We inherited it or received it from three different sources. So in coming to your final result, you have to consider the source of the real estate. Ultimately how we got here today, my client Daniel filed a partition suit. He asked the court to partition those tracts of real estate that he owned in common with his brothers. The brothers then came together. They signed an agreed judgment for partition where they set forth the interests of the parties. The order also sets forth the right of first refusals that are applicable. They also consented that a partition was appropriate and that we should move towards partition. We appointed a commissioner. I then on behalf of Daniel filed a motion for summary determination on the issue of the right of first refusal. That was denied. My motion sought simply to argue to the court that the right of first refusal was not operative in this case, and I will explain that to you. The court disagreed with me. Counsel on behalf of the two defendants, Tommy and Albert, filed a motion to enforce rights of first refusal. Simply put, they want to buy the real estate before we go to public auction. The judge said, yes, and here's why. First, I want to argue the trust. The trust is currently still intact. The real estate, the undivided one-half interest on the group one, is still held in trust. What the trust language, of course, as I argued, has said is if my son should decide to sell, he must offer it to the other sons. But remember, my client owns an undivided one-sixth interest in this same grouping of real estate. Outside and free from trust, he did not get it from the trust, and it is not subject to a right of first refusal. He has asked the court to partition the real estate that they all four owners own in common, and he's asked the court to do that pursuant to the Partition Act. The court then came in and said, I believe this was a decision to sell on behalf of my client, triggering the right of first refusal that's set forth in the trust. The problem with that is a few problems. Specifically, the trust dictates that it is to be held in trust and operated and overseen by co-trustees for a period of 10 years. Those co-trustees are actually the same three gentlemen that own the real estate outright, the other undivided one-half. They're all co-trustees over this farm. They are pursuant to the Trust and Trustees Act, vested with the ownership discretion. They are also to manage that real estate, and they are vested with the decision to sell. My client has filed this lawsuit in his capacity individually as the undivided one-sixth owner. He did not file it as a beneficiary, and he did not file it as a co-trustee. So, he has not triggered the right of first refusal because it is plainly set forth in the trust. As a beneficiary, he has no power to compel the real estate sale. It is subject to the grantor's provisions that require it to remain in trust for that 10-year period. So, he wouldn't have the power, even as a beneficiary, to make that decision to sell. As a co-trustee, he has not filed the suit. So, again, as a co-trustee, there are three trustees, and the Trust and Trustees Act says that in order to make a decision, it must be done by the majority of trustees. Here, he's only one. So, even if he had filed as a co-trustee, he's not triggered that right of first refusal. He's filed it on his undivided one-sixth interest. So, that's why I do not agree that the right of first refusal was triggered in this case. Not only that, if you specifically look at the language that the testators put in place, the language says it's to be held in trust for a 10-year period after my spouse passes. Then, it's to be distributed to my sons equally. Comma, provided, however, if one of my sons shall decide to sell their share in real estate, he must offer it to the farming sons at a price he be willing to accept from any other buyer. So, we don't get to the right of first refusal on the trust real estate until it's distributed. It requires distribution. Then, the language comes in with respect to the right of first refusal. Are you saying he only sought partition of half of the ground? No. He sought partition on the entire tract of real estate. But, he did so because he individually holds an undivided one-sixth interest in the whole. And, he filed it individually. So, you have four owners. You have the trust that actually holds real estate, that holds an undivided one-half interest. The undivided interest is in the entire parcel. So, you don't get to that right of first refusal until it's actually been distributed. So, my client, all he's done is avail himself of the partition statute as an individual owner in part of the whole. But, the evaluator found that the ground wasn't subject to partition. Correct. It could not be distributed in kind. And so, the commissioner ultimately has opined that a sale would be appropriate. So then, with respect to the trust, there's some unique arguments there in terms of why the right of first refusal is not operative in this case. With respect to all of the real estate, so that would include the trust real estate, and then also the real estate they received as an undivided one-third interest from the estate. Because the language is the same, again, there are arguments that that would apply to all of it. If the court found that in this case, maybe he triggered it as a beneficiary, or maybe he triggered it, or somehow it was in play, then we have to look at the partition action and its inner reaction with these rights of first refusal. The rights of first refusal are substantially the same from either source. They say, if my son decides to sell, it's operative, and he must accept a price he's willing to accept from any other buyer. So, what did Danny do in this case? He filed a partition action. Counsel made the argument, and the court agreed, that by filing a partition suit, he effectively made a decision to sell the real estate, and therefore he must be required to offer it to his other two brothers as part of the partition suit. The court then went on and agreed with counsel that my client must be obligated to take the appraised value that the commissioner came back with. That we couldn't then go on to public auction. That instead, we had to short circuit it and immediately sell it at the appraised value. The court gave your client a chance to withdraw the petition for partition. He did. Your client didn't avail himself of that opportunity. That's correct. Because at this point, he wants to sever his interest. He didn't necessarily ask for the sale at the initial outset. Instead, he just wants to enjoy the possession and ownership of his own real estate. Right, but that can't happen because the evaluator said there's no fair way to divide the ground. That is true. But ultimately, what about the donor intent? How does that play into all of this? You're talking about the client just wants to enjoy the possession. The donor intent comes into play, and you must evaluate what the language itself provides. And so the rules of construction clearly say that you first must look at the language itself to surmise what the intent of the donor was. In this case, there's no ambiguity. It clearly says if he makes a decision to sell. And in this case, I agree. If you were to find that my client effectively decided to sell, that we have to figure out how to put that right of first refusal in play. But once he files a partition action, all he's done is given the court discretion on whether or not the sales to happen. You have three potential outcomes. You have a division in kind. You have a division with ulti. And then you also have a sale. And in this case, you also have an agreed judgment where all three gentlemen came in and said that a partition suit should go forward. So even though he's given my client the ability to withdraw his petition, you still have an agreed judgment where all three have come in, and I would argue purge the fact that the complaint came from my client. So what you have to do is determine how you put into place the donor's intent. I understand, but you must look at the language itself. And if the language is plain, then you can't go off the page. And so in this case, you have to determine if the decision to sell was made by my client or not. And so what we've argued is a partition action is just that. He's availed himself of the statutory procedures put in place. It is a creature of statute. The judiciary's put in place to enforce it and oversee it. But in this case, it clearly says file a complaint. You decide what the rights and interests of the party. You get a commissioner. If the commissioner says, can't do it, got to be sold, what you do is you submit to a public auction. There is no provision in the Partition Act for a private sale. And so in this case, we've said it's not a decision because we've given it to the judiciary to make the determination of what the proper outcome is. But not only that, if in fact the court did find it was a decision, you have to follow the procedures set forth in the Partition Act. And the way that you do that is you submit it to a public auction designed to get the fair market value. And then if in fact we want to give them the ability to match the last bid, they can do that. And that's how you effectuate. Interestingly, you talk about intent. And in the right of first refusal, at some point it does flip into evaluating the intentions of my client. Because it says he must take any price he would be willing to take from any other buyer. So then at that point it is, what is the intent of my client in seeking the partition action? And simply put, his only option in a partition is a public auction. And so in short-circuiting that, the court's gone right for a public sale, but that's not contemplated anywhere in the Partition Act. The Partition Act, there was some discussion about whether in fact my client could be ordered to take even two-thirds of the value because there's language saying the court can confirm a sale at two-thirds. But the language actually says if it is two-thirds of the value, it can be confirmed. But only upon hearing that that is the appropriate value. The court actually has an option to go ahead and submit it to another sale. They don't believe that that's appropriate. So the fact is there are some steps that are put in place that my client did avail himself of. But it is not to short-circuit that and direct an immediate sale. How would you have a public auction where you would allow somebody else to come in at the end and match a bid? And wouldn't that be subject to manipulation? For example, your client could have somebody there who's bidding up the price of the ground. You're correct. I think that is inherent in a public auction and somewhat unavoidable. But yes, I understand the risk that you're getting at. But the way you would effectuate that, and it's interesting in this case because again you have the two classes of real estate. With respect to the estate, I think it's pretty easy. If you decide that there was a decision to sell on behalf of my client, and then as a result of that the right of first refusal is exercised, we're saying submit it to public auction, and then once the auction is concluded, there would be an understanding and an announcement at the auction that there would be a right of first refusal, that it's contingent upon the defendants being able to match the last bid. And so I think there's a manipulation that can be available in any public auction. But simply put, that's what's in the statute in terms of what's required in these cases. So I don't think you can properly address that. If you look in though, if you evaluate the ground that is shared in common with the trust, we have kind of an issue there. Because the trust real estate is currently held in trust, as I said. My client again has an individual interest. If you say my client has somehow to offer real estate that he doesn't have control of, and if somehow his interest in what's in the ground and the ground that's in the trust has to be offered to the gentleman, to his brothers, he would be selling his interest, I assume, beneficial interest in the trust. But he still has an undivided one-sixth interest in the real estate. So you'd have sale number one where he's transferring his interest in what's held in trust to his brothers. He would still be required to submit to a public auction on the larger tract, because he doesn't have a right of first refusal on his individual one-sixth interest. So that part of it becomes even more difficult, not very economical. So you're having an inter-sale before you have a public sale. And so that's why I submit the trust in the estate ground is different. And at this point, I don't believe there's a right of first refusal on the trust ground at all. And the estate's different. I think it's a simpler issue. Overall, simply put, at this point, the trust is a little different. There is no right of first refusal operative on that. He's filed it individually. He has a right to do so as an individual owner and trigger a sale of the entire parcel of real estate. And then the proceeds are divided according to your ownership interest. Then you move over into the estate ground as well as the trust. In that instance, it's not a decision to sale. He's simply availed himself of the partition act. In the Rosenbaum v. Rosenbaum case, 38 Ill Act 3B1, 1976, there was some discussion about the partition action. The object is actually to permit a party to sever their interest. And the preferred manner is actually a division in kind, not a sale. So when he made the decision, he's simply asking that his interest be severed, not necessarily sold. He submitted it to the judge, who had the discretion to determine if the sale was appropriate. But again, that's not my client's decision. So here, that is not operative. Then you have to determine the third part of this. If it is operative, how do we accomplish that? And I would submit to you, it's just following the partition act. It's very simple. We have one sale on the entire piece of property. On the estates, if you find it in the trust as well. On the trust ground, we have one public option. They're permitted to attend, match the highest bid, and then everybody goes home. So in conclusion, I would simply ask the court to find that the trial court did err, to grant the motion for summary determination, and then to overturn the ruling on the second motion to enforce. Thank you. Thank you. Mr. Barters? May it please the court and counsel, my name is James Richard Myers. I represent the appellants in this case, William Wernz and Albert Wernz. This case is about a family farm, a farm family, and how the family farm was to go from one generation to the next generation. How this family farm was to pass from the parents, Ruby and Wilbur, down to their three sons, Danny, Albert, and William. We know from the estate planning documents how Ruby and Wilbur wanted that to go. If you look at those, you will see that Ruby and Wilbur's plan was to distribute their farm, their farm real estate, to their three sons in equal shares, subject to certain restrictions. One of those restrictions is not really before the court today, is the right of the family, certain family members, to continue to farm the family farm for a number of years. The other restriction is that should any of those sons wish to sell their real estate, they first have to offer it to the other sons, or the farming sons in one instance, on the same terms, or for the same price that they'd be willing to accept from any other buyer. That's what you can get from looking at the estate planning documents of Wilbur and Ruby. If you adopt the position advanced in this case by Daniel, then the effectuation of that plan is to have a public auction on the public auction block, paying an auctioneer commission, advertising the sale to everybody, and then having those people come to a place, family members of course can attend, but so can neighbors, so can other farmers, so can real estate developers, so can commercial developers, and anybody else that might want to bid on that property. And anybody else would be allowed to buy that property, despite what the wills of the Ruby and Wilbur say. We know that's Danny's position, because that was Danny's position when he filed this partition case. When he filed this partition case, the first thing he said in the documents was, I filed a partition case, so now I don't have to abide by my parents' wishes that my family continue to farm this land, and I don't have to abide by the right of first refusal given to my brothers. Appropriately, the trial court said, no that's not true, those two restrictions are still in play, we're going to have to deal with them. Contrary to that, and on the opposite side, if you adopt the position set forth by Albert and Tommy, and endorsed and adopted by the trial court, then Wilbur and Ruby's estate plan comes into effect, the three boys have already been distributed the property, either actually or have the beneficial interest in those trusts, and when one of them expresses an intent to sell, then there will be a quick, efficient, and economical transfer of that property in a private manner from the son that wants out to the other sons that don't want out, and the family farm stays in the family, no public auction, no expense, no risk that it goes to anybody else, no anything else. And I think if you put yourselves in the shoes of Wilbur and Ruby, and look down and say, oh look there's a public auction of our property that we've had in our family for generations, I don't think they would like that. I don't think that was their intent in any fashion. And so to sit here and try to say that somehow that's the intent, I don't think that flies. So when we were presented with this, when the trial court was presented with this, the trial court made some determinations, and in order to get where we are today, he made two basic determinations. He decided that Daniel Wernz decided to sell his property, and he decided and made a determination that Daniel Wernz was willing to accept fair market value from any other buyer, so that would be the price of the right of first refusal. Now, Danny never said out of his mouth, I want to sell. Never said it. He said it in his actions, he said it in his motions filed in the court, but he never said it out of his mouth. It would be easy if he said it out of his mouth. He also never said I'm willing to accept fair market value out of his mouth. But his actions and what he did give a good indication, and in fact the judge found that he did intend to accept fair market value, and I'll explain those. Those are the two real crux of this case. On the first point, where we have a decision by Danny to sell, Danny filed a partition case, and our position has been and always is the mere filing of that partition case is a decision to sell by Danny because the logical outcome of a partition case, whether there's alternative or not, the logical outcome of that is the sale of this real estate. What impacted the fact that your clients signed off on a consent judgment for partition? That has no effect. It has no effect because there has been no determination yet made that there was going to be a sale. What that judgment did is it said Daniel is entitled to a partition, which he is. He's entitled to go through a partition case, and it appointed the commissioner and kept that case rolling so that then a commissioner could be appointed and the commissioner could make his decisions. It also reserved in that consent judgment, specifically reserved all the rights that those clauses have, the right to farm clause and the right of first refusal clause, for determination of the court of what those meant. For those two reasons, I don't think that had any effect. If you look at the record, Albert and Tommy throughout this case have opposed the sale of that real estate from the first motion they filed to the last motion they filed. I don't believe the consent judgment changed that. A sale is not contemplated by that judgment. The argument is, though, that's being advanced, is that just filing that partition case isn't really a desire to sell, isn't really what I want to do. To me, that's the spring-loaded gun argument. That's the spring-loaded gun argument because if I go and I set up a gun pointed at a door with a trip wire over to the door, that when someone goes through to trigger that gun, I could do all those things and walk away and say, I never meant to shoot anybody. I can say, I never did shoot anybody. But lo and behold, someone got shot. I can't believe it. This is the same thing. This is a case where Danny files a partition. He says, I didn't mean to sell. The obvious result of that partition case is a sale. But, no, I didn't mean the obvious result. I meant something else. But luckily, luckily for us, we don't have to just rely on that because that's not what Judge Russell solely relied on. Not just the filing of a partition case, but also Danny's prosecution of that partition case, up to and including his motion to sell the property. He filed a motion to sell the property after the commissioner had decided that a partition in kind wasn't possible, a partition in kind with some loyalty wasn't possible. Now there's only one option left, one option left, which is this property gets sold. And after that happens, Danny files a motion in this court, in writing, that says, I want to have a public sale of the property. Now that sounds like a desire to sell to me. That's the gun going off. We now have a gun going off. Beyond that, even beyond that, Your Honor alluded to, Judge Resch gave Danny the option after he was ordered to sell to his brothers. So now there's zero possibility that Danny's not going to have to sell because he's been ordered to sell to his brothers. Judge Resch gave him 14 days to withdraw his case and evidenced the fact that he doesn't want to sell and keep his property. That's all fine. He didn't do it. He didn't do it. He didn't do it. And to use my analogy again, that would be like going to the victim who just got shot, pulling the bullet out, putting it back in the gun, packing that whole thing up and putting it away. Okay, fine. You've given away to say, I really don't want to sell, Judge. I know you've told me I want to sell, but I really don't want to sell, but I don't avail myself of it. That's the decision to sell. And that's what the trial court found was there was a decision to sell in this case and nothing Danny's done before since then has changed that he wants to sell his property. They stand here today saying, we want a public auction. If we in fact have to go through this, we want a public auction. So that finding leads you to the next question as to what is Danny willing to accept from any other buyer. And Judge Resch found that was fair market value. And as said by Ms. Shove, there's history behind that because the first offer made by William and Albert was for two-thirds of fair market value based on the Partition Act. And the Partition Act says, once the commissioner's determined the value and you have your public sale, if it comes in at two-thirds, the court can confirm it. The court can't confirm it if it's less. It has to be two-thirds. And I would liken that to me going up to a slot machine and putting in my quarter. I put my quarter in there and I willingly say, when I do that, I am willing to lose my quarter. What I want is a jackpot, but I'm willing to lose my quarter. Danny says, what he's really saying is, I'm willing to have a public auction to see what happens, or I want to have a public auction to see what happens, but I'm willing to take two-thirds because that's a possible outcome of this. A possible outcome of this is there's an auction, it brings two-thirds of value, it comes back, the court confirms it, and I get my two-thirds of value. Well, Judge Resch didn't agree with us. Judge Resch said that's not, in looking at what the parents wanted and interpreting their estate planning documents, that's not what they wanted. They wanted something different. So we made another offer of fair market value. And Judge Resch decided that fair market value is in fact what Daniel wanted, not because he ever said that, he never said that, but because of the actions he took. And the actions he took were to file his partition suit and then ask for a public sale to obtain fair market value. Now, auctions obtain fair market value, they're subject to manipulation, but I think there's ample case law that say if a piece of property sells at auction, that's pretty much evidence of what its fair market value is. Well, Daniel wanted the trial court to do that public auction, but the trial court interpreted the documents and the wills of Ruby and Wilbur and said that these don't contemplate a public sale, and he didn't just do that, and say well that's what I think, he did that and says I have reasons for thinking that, I have reasons for thinking that, and that auctions are speculative. I don't know what an auction is. In a bit it could bring more, it could bring less. He says this right of first refusal is worded, it says, what Danny is willing to accept from any other buyer. It's not worded to say Danny gets the highest and best possible price. That's common auction language. And then he says rights of first refusal have purposes. Rights of first refusal have purposes to keep land from going on public auction and to keep the family business in the family and not in the neighbor's yard. To have zero possibility that this land winds up with a commercial developer or another farmer and have every possibility that it winds up with one of the brothers should they want it. And because of that he did not order the public auction. But he had evidence of what fair market value of this property was. It's called the commissioner's report. The commissioner was charged by the court to go find the fair market value of the property and did so. So there it is, there's fair market value. And so by filing a partition suit Danny says I want to have a sale, I want to realize fair market value because that's what auctions do. But we know what fair market value is. You don't need an auction to tell us what that is. I believe Danny wants an auction so he can manipulate the price and run it up and he knows his brothers will buy it if it goes up to 50 billion dollars. But that's not what was contemplated by his parents. His parents did not contemplate a public auction. They contemplated the use of that right of first refusal. I don't think the there's two arguments made by Ms. Shope that I have to address. First is the fact that Danny filed this solely as a landowner of the one-sixth interest in the trust instance and she accurately set forth the interests of the different parties. Danny has a one-sixth interest personally and he owns a third beneficial interest. Well first, you can sell a beneficial interest. There's nothing in those documents that say you can't sell that. If someone wants to buy it, they could buy it. I'm sure someone might buy it. I'm sure that Albert and Tommy would buy it tomorrow. So it is possible to sell that. You don't get title of the real estate, you get the beneficial interest in the trust. But the fact that Danny claims to have filed this as an individual and not a beneficiary is a specious distinction. He's still the same person. He's still a son. The right of first refusal speaks in the terms of son, not in beneficiary, not in whole owner. It speaks in the terms of son. And when he filed his motion to sell, he said, I want to sell the whole thing. I don't want to sell just the one half that me and my brothers own individually or any other smaller portion. I want to sell the whole thing including the trust that I own. And the result of that is going to be a sale, if it's allowed to go forward, is a sale of the trust property whether or not the trustees like it and whether or not the state documents say there's a right of first refusal or not. And it's going to get sold and it's just going to be monolith. And that's not what was contemplated by Wilbur and Ruby. So I don't think that distinction holds water. Also, there's an argument made, I think, that for some reason this trust doesn't operate to have these restrictions for the 10 years that it's in trust, that the property is in trust for 10 years and then after it's distributed there's these rights of first refusal. Well, that doesn't make any sense. Who would take the time to put restrictions on their property to keep it in the family, but then give a 10 year window to say anybody can buy it for any reason for any amount of money, but if no one does then I'm going to put restrictions against sale on it. Who would sit down in the estate planner's office and decide to do that? The answer is nobody. So that wording, although not the best wording in the world, I didn't write it, Ms. Shelf didn't write it, but it's not the best wording in the world, has to mean that from the minute these boys get the right to sell it or get the right to sell their beneficial interest in it, they can't do it unless they offer it to their brothers for what they'd be willing to sell to any other person. So I don't believe that that argument works either. I think I addressed what I wanted to address. Unless there's questions of me, I'll let you have the rest of my time. I don't believe so. Thank you. Mr. Butler? Just briefly. There's been a lot made of my client's action in the partition suit. The fact that he filed a complaint, that he prosecuted the complaint, and he filed a motion to sell. We had an agreed judgment. All parties at that point stipulated. We had a commissioner's report. What's the next step? Just sit there? So at that point, yes. He did file a motion for sale. But he did that because he was asking the court to continue the case. Otherwise, we would have sat in limbo and we would have nothing left. So at this point, he's simply asking the court to follow the procedures set forth. What we have forgotten at the trial court level and that we continue to kind of gloss over is this distinction on the trust ground. There is no right of first refusal on his one-sixth undivided interest. So he has every right to trigger the partition. And the partition action doesn't speak in terms of  It's a partition on an entire tract of real estate where there's undivided ownership. And the partition action is me saying to the court, I don't want to own real estate with these people anymore. Something's not going right. So simply sever my interest. And so what my client has done is ask them to do that. Sever the interest. And the problem that you're going to have is with respect to the trust ground. He didn't have that power to ask the court to do that. Even as a beneficiary, he didn't have the power to do that. Because it's subject to the trust provisions the grantor put in place. And Danny doesn't have discretion. So to get to that language, he has to make a decision that he didn't have the power to make with respect to the trust ground. He's asking on his individual portion. But yes, it affects the entire tract. So at this point, the rights of first refusal are not yet in play. The donor intent, you asked me about that. And we have to look at that provision. There was a lot of discussion about, well, I don't think mom and dad would have intended for this to not be farmed by family. And I don't think they would have intended for it to not go to public auction. But the language is pretty bare bones here. And we have to look at the language itself in determining the grantor intent. The language says, if he decides to sell, and at a price he'd be willing to take from any other buyer. None of that other stuff is on the page. And so we have to figure out how does that interrelate with the partition action. With the trust ground, he didn't have the power to make the decision. So we have no decision. With respect to the estate, there's a better argument to be made. He had the power to make it. But again, what are we looking at to determine how it's affected? You're looking at the deed of conveyance. She conveyed it on the deed. It has the restriction. That's all you got. And so there's a lot of discussion about the intent and all of this. But all we've got is the language on the deed. So he has to have a decision to sell. And it also has to be the price he's willing to accept. And so in this case, the decision was to file a partition action. That's all you got. So I'm simply asking the court to interpret it in accordance with the law and overturn the lower court's rule. Thank you. Thank you, counsel. We'll take this matter under advisement and stand in recess until the readiness.